UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAZIK-AYLA MAMYROVA,

                        Plaintiff,

   -against-

NEIGHBORHOOD ASSOCIATION FOR INTER-CULTURAL AFFAIRS, INC., et al.,

                        Defendants.

21-cv-7170 (AS)

MEMORANDUM OPINION
AND ORDER

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Plaintiff Nazik-Ayla Mamyrova claims that Defendant Neighborhood Association for Inter-Cultural Affairs (NAICA) and two of its employees, Defendants Tamika Brown and Isha Smith, discriminated against her. NAICA is a not-for-profit corporation that provides housing assistance, including by running shelters. *See* Dkt. 56-4 at 9:11–10:16, 24:15–25:20. Mamyrova stayed at one of NAICA's shelters between November 2018 and May 2019. Dkt. 65 ¶¶ 21, 31.

Mamyrova's pro se complaint alleges that, during that time, she endured various forms of discrimination. For example, she says Brown refused to issue her a pass to stay out past curfew so that she could attend religious services. Compl. ¶¶ 1–5, Dkt. 1. She also says Brown repeatedly told her to "go back to her home country," Kyrgyzstan, and that she was taunted as "Russian-Asian" by other NAICA staff. *Id.* ¶¶ 6, 11, 39, 42, 86. She alleges other indignities (perpetrated by Brown, Smith, and others) relating to her medical conditions, advice she received about New York City's housing-voucher program, and other issues.

She says that these acts violated her rights under 31 U.S.C. § 6711 and Chapter 21 of Title 42. *Id.* at 7. As relief, she requests $1 million in damages as well as mandating that "Brown and the other case workers engage in diversity, religious and racial equality training." *Id.* at 11.

A few months after the defendants answered Mamyrova's complaint, she acquired pro bono counsel to help her with settlement discussions, discovery, and opposing this motion for summary judgment. *See* Dkts. 23, 25–26, 33, 64. Although she ended up being counseled for this motion, the defendants also served her with a Rule 56.2 notice, explaining the nature and consequences of summary judgment. Dkts. 58, 60.

Because it is clear from the summary-judgment record that Mamyrova's claims do not meet the law's requirements, the defendants' motion for summary judgment is GRANTED.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986).

## DISCUSSION

### I. The 31 U.S.C. § 6711 claim

Under 31 U.S.C. § 6711(a), "[n]o person in the United States shall … be subject to discrimination under[] a program or activity of a unit of general local government … if the government receives a payment under this chapter." Even if NAICA's shelters are "program[s] … of a unit of general local government," Mamyrova has not produced any evidence that NAICA or any other unit of government involved here "receives a payment" under Chapter 67 (or any chapter) of Title 31, as required for liability. *Id.*; Dkt. 56-4 at 24:15–25:20. Because the summary-judgment record "includes no facts to suggest that [Mamyrova] has been subjected to discrimination under 'a program or activity of a unit of general local government' receiving funds under Title 31, … [Mamyrova] has failed to set forth a cognizable claim." *McArthur v. Salvation Army & Navy*, 2022 WL 891994, at *2 (D. Conn. Mar. 25, 2022) (so holding and collecting cases).

Nor does the record demonstrate that Mamyrova exhausted her administrative remedies. Under 31 U.S.C. § 6716(b), a plaintiff may not bring a § 6711 claim until she files a complaint with the Secretary of Housing and Urban Development. *See* § 6720(a)(9). Exhaustion is an affirmative defense, meaning the defendants bear the burden. But their burden is to prove that Mamyrova did *not* do something, so it is akin to the burden shifting described in *Celotex*. Here, the defendants have represented that Mamyrova did not file a complaint with the Secretary. Dkt. 59 at 11. Mamyrova has not claimed in response (let alone produced evidence) that she filed a complaint. So the failure to exhaust is another, independent reason that this claim fails.

### II. The claims under Chapter 21 of Title 42

Mamyrova's second claim is for violations of Chapter 21 of Title 42 of the U.S. Code. She doesn't specify which section, but that chapter covers "Civil Rights." The defendants propose a few possible claims that Mamyrova might be trying to make, and Mamyrova does not dispute these characterizations in her opposition brief.

*First*, under § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws." Perhaps Mamyrova's claim is that the

2

discrimination she suffered interfered with a contract she had with NAICA or with someone else. But a "claim brought under § 1981 … must initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)). That is, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id.* at 479–80. Mamyrova has not identified (let alone produced evidence of) any contractual rights that were impaired by any discrimination.

*Second*, § 1983 prohibits the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" "under color of any statute, ordinance, regulation, custom, or usage, of any State." An act is "under color of" state law if it (1) involves the exercise of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" or (2) constitutes "state action." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (cleaned up).

Mamyrova has not shown that NAICA was acting under color of state law. Indeed, Mamyrova does not even address the issue in opposing the defendants' motion or point to any evidence supporting this element of her claim. Nor is it apparent from the record how Mamyrova would meet this requirement. On the first prong, the alleged discrimination was not an exercise of state power. There is no evidence that the interpersonal discrimination that Mamyrova suffered, such as allegedly being told to "go back to her home country," was an exercise of state power. And though the curfew requirement was based on a local-government policy, there is no evidence that the power to control access to NAICA's shelter was "possessed by virtue of state law" or "made possible only because the [NAICA staff was] clothed with the authority of state law."

On the second prong, there is no evidence that NAICA is a state actor. The only evidence in the record indicates that NAICA is a private, not-for-profit corporation. *See* Dkt. 56-4 at 24:15–25:20. Although NAICA receives public money and is subject to local-government regulations, those facts alone don't make it a state actor. *Blum v. Yaretsky*, 457 U.S. 991, 1011–12 (1982) (holding that receiving government funding doesn't trans-form an organization's acts into state action); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of … private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996) ("Extensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor; instead, the state must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor.").

Instead, Mamyrova would need to show that the "State has so far insinuated itself into a position of interdependence with [NAICA] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961), or that NAICA

is exercising "powers traditionally exclusively reserved to the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Mamyrova has not attempted to show either. No evidence suggests that NAICA was "entwined" in formulating "governmental policies" or that government was "entwined in [NAICA's] management or control." *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 552 (2d Cir. 2001). And "the provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state." *Young v. Halle Hous. Assocs., L.P.*, 152 F.Supp.2d 355, 365 (S.D.N.Y. 2001); *see also Acevedo v. Nassau County*, 500 F.2d 1078, 1080–81 (2d Cir. 1974) (holding that a county has "no constitutional or statutory duty to provide low income housing").

*Third*, § 2000a(a) prohibits discrimination in "any place of public accommodation." A plaintiff who brings a claim under this section "cannot recover damages." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). Instead, she can get "only injunctive relief." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004). Here, Mamyrova's only request for non-monetary relief is that "Brown and the other case workers" participate in diversity training. As an initial matter, the Court doubts that it could enjoin the non-party "other case workers" to take certain remedial actions. *See Sheet Metal Contractors Ass'n v. Sheet Metal Workers' Int'l Ass'n*, 157 F.3d 78, 83 (2d Cir. 1998) (noting that non-liable parties cannot be forced to shoulder "remedial injunctive relief").

More broadly, to have Article III standing to seek injunctive relief, Mamyrova must face "a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation omitted). Mamyrova has shown no such threat here. She is no longer at any NAICA shelter, has not been for several years, and is currently receiving a housing subsidy and disability-insurance payments to live on her own. Dkt. 56-2 at 116:17–25. So Mamyrova's returning to a shelter is, at best, "conjectural." *Lyons*, 461 U.S. at 102 (citation omitted). And even if she did, Brown is no longer working for NAICA and there are non-NAICA shelters, making further interactions with Brown or other NAICA caseworkers unlikely. *See* Dkt. 56-3 at 8:7–9, 14:8–12. As such, Mamyrova is not entitled to an injunction under § 2000a.

### III.   The procedural objections

Perhaps recognizing her claims' legal shortcomings, Mamyrova's brief in opposition to the motion for summary judgment focuses entirely on supposed procedural shortcomings in the defendants' brief. *See generally* Dkt. 64. In particular, Mamyrova identifies statements in the defendants' brief that she says were not included in their Rule 56.1 statement, were not supported by a record citation, or mischaracterized record evidence. *Id.* Even if true, none of those procedural errors would warrant completely ignoring the motion's substance.

Although parties should comply with all local rules and provide citations for every proposition, the consequences of non-compliance depend on the circumstances and are within the Court's discretion. Here, the issues raised do not warrant Mamyrova's requested "summary denial" of the motion. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000) (district court had "the discretion to excuse … non-compliance with the Local Rules"); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of

summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.");  Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but *it may consider other materials in the record*." (emphasis added)); Fed. R. Civ. P. 56(e)(3)–(4) ("If a party fails to properly support an assertion of fact … the court may … grant summary judgment if the motion and supporting materials … show that the movant is entitled to it; or … *issue any other appropriate order*." (emphasis added)).

Mamyrova's most substantive argument is that the procedural failures mean that the defendants have failed to meet their burden of proof. But nearly all of Mamyrova's objections are to the defendants' statements about what happened at the NAICA shelter. That conduct is not the basis for the Court's ruling. Instead, her claims fail because she has not created a genuine issue of material fact to support essential elements of the claims she is asserting, and as to which she bears the burden of proof. (As noted, she doesn't bear the burden of proof on the exhaustion issue, but the analysis is similar.) The defendants satisfied their moving burden on summary judgment to "show—that is point[] out to the district court—that is there an absence of evidence" on the elements addressed by the Court. *Celotex*, 477 U.S. at 325. That shifted the burden to Mamyrova to put forward some proof on the elements of her claims. Her failure to do so is a valid ground to grant the defendants' motion. *See id*. at 323–26; Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be … genuinely disputed must support the assertion by … showing that … an adverse party cannot produce admissible evidence to support the fact.").

## CONCLUSION

For these reasons, the defendants' motion is GRANTED. The Clerk of Court is directed to enter judgment for the defendants and close this case.

SO ORDERED.

Dated: February 14, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge

5